**Certiorari Granted, October 18, 2010, No. 32,594**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-097**

**Filing Date: August 23, 2010**

**Docket No. 28,896**

**WALTER F. SMITH, III,**

   **Plaintiff-Appellant,**

**v.**

**WILL DURDEN, DENISE DURDEN,**
**WILLIAM A. DeVRIES, and**
**MARION DeVRIES,**

   **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Law Offices of Daymon B. Ely
Daymon B. Ely
Albuquerque, NM

William G. Gilstrap, P.C.
William G. Gilstrap
Albuquerque, NM

for Appellants

Butt, Thornton & Baehr, P.C.
Jane A. Laflin
Emily A. Franke
Albuquerque, NM

for Appellees

**OPINION**

1

**GARCIA, Judge.**

**{1}** The issue in this case is whether evidence of humiliation and mental anguish is sufficient to establish actual injury for liability purposes in a defamation action. Plaintiff, Rev. Walter F. Smith, III, appeals from the district court's order granting summary judgment in favor of Defendants regarding his claim for defamation. We reverse.

## BACKGROUND

**{2}** This defamation action stems from the soured relationship between Plaintiff, who was the reverend at St. Francis Episcopal Church in Rio Rancho, New Mexico, and Defendants, two of whom were members of the church's vestry. A few members of the vestry had concerns about Plaintiff's ability to lead the church, and they met with the Standing Committee of the Diocese of the Rio Grande. As part of its evidence against Plaintiff, the vestry presented the committee with a packet of documents. The packet contained an anonymous letter stating that Plaintiff had engaged in inappropriate acts with minor members of the congregation. Defendants later published the packet of documents to an unknown number of members of the congregation, and Plaintiff's claims stem from this later publication of the anonymous letter.

**{3}** Defendants moved for summary judgment on Plaintiff's claim for defamation. The district court granted Defendants' motion for summary judgment. This appeal followed.

## DISCUSSION

### Standard of Review

**{4}** We apply a de novo standard of review when reviewing summary judgment decisions. *Fikes v. Furst*, 2003-NMSC-033, ¶ 11, 134 N.M. 602, 81 P.3d 545. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. The moving party has the burden to demonstrate that summary judgment is appropriate. *See Blauwkamp v. Univ. of N.M. Hosp.*, 114 N.M. 228, 231, 836 P.2d 1249, 1252 (Ct. App. 1992). Once the moving party "makes a prima facie case that summary judgment should be granted, the burden shifts to the opponent to show at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact." *Fikes*, 2003-NMSC-033, ¶ 11 (internal quotation marks and citation omitted).

### Actual Injury

**{5}** For purposes of summary judgment, Defendants argued that Plaintiff failed to prove liability because he did not present evidence to prove actual injury to his reputation. *See* UJI 13-1002(B)(8) NMRA. The district court concluded that Plaintiff's evidence of mental anguish and suffering were insufficient to prove the prima facie element—actual injury to

his reputation. Plaintiff argues the district court erred in concluding that Defendants met their burden of establishing a prima facie case for summary judgment. Plaintiff specifically asserts that Defendants did not put forth prima facie evidence to establish that he did not suffer actual injury based on his feelings of humiliation and anxiety. We agree.

**{6}** This case requires us to clarify the standard in New Mexico for establishing the prima facie element of actual injury in defamation cases involving private plaintiffs and private matters. Defamation law dramatically changed for private plaintiffs after the United States Supreme Court case *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). Prior to *Gertz*, common law defamation allowed for recovery of compensation without presenting evidence of any loss because injury was presumed based on the fact of publication. *Id.* at 349; *see Reed v. Melnick*, 81 N.M. 608, 612, 471 P.2d 178, 182 (1970) (discussing the four categories of slander per se and abolishing, with an exception, "the requirement of proof of actual damage in a latent libel action"), *overruled by Marchiondo v. Brown*, 98 N.M. 394, 649 P.2d 462 (1982). In response to this perceived unfairness and in an effort to balance constitutional concerns, *Gertz* explained it was "necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury." 418 U.S. at 349. The Court went on to explain that evidence of actual injury was not limited to out-of-pocket loss but could include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 350. As a result of the holding in *Gertz*, "liability is [now] limited to recovery of actual damages" in defamation actions. *Marchiondo*, 98 N.M. at 402, 649 P.2d at 470 (emphasizing that there needs to be evidence of an actual injury, but no evidence of an actual dollar value for the injury is required); *see Poorbaugh v. Mullen*, 99 N.M. 11, 20, 653 P.2d 511, 520 (Ct. App. 1982) ("*Gertz* requires proof of actual damages.").

**{7}** After *Gertz*, a split developed between the jurisdictions regarding the proof of injury needed to establish liability. Some jurisdictions determined that "proof of injury to reputation is a prerequisite to recovery, apparently feeling that injury to reputation is, as one court put it, 'the essence and gravamen' of the action" of defamation. Earl L. Kellett, Annotation, *Proof of Injury to Reputation as Prerequisite to Recovery of Damages in Defamation Action–Post-Gertz Cases*, 36 A.L.R. 4th 811 at § 2[b] (1985). However, other jurisdictions "reached the conclusion that injury to reputation need not be shown in defamation actions, usually holding that plaintiffs in such actions may base damage claims on [personal] humiliation and mental anguish and suffering." *Id.* In response to this split in interpretations of *Gertz*, the United States Supreme Court clarified in *Time, Inc. v. Firestone*, 424 U.S. 448, 460 (1976), that a plaintiff could recover in a defamation action for injuries even without an injury to reputation.

**{8}** In *Marchiondo*, 98 N.M. at 402, 649 P.2d at 470, New Mexico adopted the *Gertz* requirement of proof of damages and its explanation of actual injuries. *Marchiondo* did not limit proof of actual injury to evidence regarding one's reputation. *Id.* (explaining that proof of actual injury included evidence of damage to reputation and standing in the community along with evidence of personal humiliation and mental anguish and suffering); *see Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 430, 773 P.2d 1231, 1237 (1989) (stating that the "plaintiff had the burden of proving one or more of the following injuries: harm to [the] plaintiff's good name and character among friends, neighbors and acquaintances; harm to

3

[the] plaintiff's good standing in the community; personal humiliation; and mental anguish and suffering"). Subsequent to *Gertz* and *Marchiondo*, the general elements of defamation in New Mexico became "a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff." *Newberry*, 108 N.M. at 429, 773 P.2d at 1236; *see Cory v. Allstate Ins.*, 583 F.3d 1240, 1243 (10th Cir. 2009) (applying the elements of defamation set forth in *Newberry*).

**{9}** Although New Mexico cases did not require that actual injury to a plaintiff's reputation be demonstrated to prove actual injury, *see Newberry*, 108 N.M. at 429, 773 P.2d at 1236, the "injury to the plaintiff's reputation" language was incorporated into our Uniform Jury Instructions on defamation in 1986. UJI 13-1002(B)(8) (1986 Recomp.). UJI 13-1002 lists the elements in a defamation claim and states that one of the elements is that the defamatory "communication caused actual injury to the plaintiff's *reputation*" in order to prove liability. (Emphasis added.) Thus, according to UJI 13-1002(B)(8), an injury specific to the plaintiff's reputation appears to be a required element to establish liability. The jury instructions, however, were intended to comply with the holdings in *Gertz*, *Marchiondo*, and *Poorbaugh.* UJI 13-1002 comm. cmt. ("The current instructions comply with the clear import of the language in *Marchiondo*."); UJI 13-1002 use note. According to the UJI 13-1002 use note for Section (B)(8), the drafters relied on *Poorbaugh*, 99 N.M. at 20, 653 P.2d at 520, and added the element of actual injury because "New Mexico no longer allow[ed] presumed damages in defamation actions." *See Marchiondo*, 98 N.M. at 402, 649 P.2d at 470 (noting that "[t]he standard of strict liability no longer applies"). *Poorbaugh*, a case decided by this Court only months after *Marchiondo*, applied the holding in *Marchiondo* and stated that damages had to be proved to establish liability and that damages could be proved with evidence of humiliation and mental anguish. *Poorbaugh*, 99 N.M. at 19-20, 653 P.2d at 519-20.

**{10}** Neither *Marchiondo* nor *Poorbaugh* limited actual injury to harm a person's reputation. The qualifying language "to the plaintiff's reputation" added in 1986 to UJI 13-1002(B)(8) did not have any basis that was founded upon the common law tort of defamation that existed in New Mexico when the instructions in question were adopted. *See Marchiondo*, 98 N.M. at 402, 649 P.2d at 470 (noting that "as to the law of defamation . . . [t]he ordinary common law negligence standard of proof shall apply to private defamation plaintiffs to establish liability, and liability is limited to recovery of actual damages"); *Poorbaugh*, 99 N.M. at 19-20, 653 P.2d at 519-20; *see also Reed*, 81 N.M. at 609-12, 471 P.2d at 179-82 (recognizing the pre-*Gertz* debate regarding the development and amendment of the common law rule embodied in Section 569 of the Restatement of Torts as to libel, and further recognizing New Mexico's retention of the common law rule in the Restatement (Second)). As a result, the addition of the language "to plaintiff's reputation" included in Section (B)(8) of UJI 13-1002 was erroneous.

**{11}** When revising the UJI, the drafters also added UJI 13-1010 NMRA (1986 Recomp.), which is a damages instruction for defamation claims. UJI 13-1010 provides a non-exclusive list for proving actual injury for damages purposes that includes many of the examples in *Marchiondo.* UJI 13-1002(B) in essence created a much narrower standard for

4

proving actual injury for liability purposes than the broader common law standard for proving actual injury when compensation and damages are determined under UJI 13-1010. Prior to the adoption of UJI 13-1002(B)(8) and UJI 13-1010, no distinction existed for the establishment of actual injury for liability purposes versus actual injury for damages purposes. Consistent with *Reed*, *Marchiondo*, *Poorbaugh*, and *Newberry*, the list set forth in UJI 13-1010 for establishing actual injury for damages purposes should also apply for establishing actual injury for liability purposes under UJI 13-1002(B)(8). *See Cowan v. Powell*, 115 N.M. 603, 605, 856 P.2d 251, 253 (Ct. App. 1993) (stating the "well-established New Mexico law that jury instructions are to be considered as a whole"). However, UJI 13-1002(B) in essence created a much narrower standard for proving actual injury for liability purposes than the broader common law standard for proving actual injury when compensation and damages are determined under UJI 13-1010. Consistent with our established common law definition of defamation, evidence of humiliation and mental anguish are actual injuries that are compensable if proved by a plaintiff even when that plaintiff does not prove harm to his or her reputation. *Marchiondo*, 98 N.M. at 402, 649 P.2d at 470.

**{12}** It is the mistaken language included in UJI 13-1002(B)(8) that has caused the error in this case since the district court and Defendants relied on this actual injury to "reputation" language to conclude that Plaintiff had to prove actual injuries to his reputation as a specific element of liability before he could try to prove any damages. *See State v. Wilson*, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) (stating that uniform jury instructions are presumed to be correct statements of the law). We suggest correcting the language in UJI 13-1002(B)(8) to more clearly state the common law elements of proving actual injury to a plaintiff as the proper basis to establish liability. *See Wilson*, 116 N.M. at 795-96, 867 P.2d at 1177-78 (allowing the Court of Appeals to amend, modify, or abolish uniform jury instructions that have not been specifically addressed by the Supreme Court). Changing the element of UJI 13-1002(B)(8) to read, "The communication caused actual injury to the plaintiff; and" would eliminate the present error and reflect the proper statement of the law regarding the tort of defamation in New Mexico.

**{13}** Defendants have argued that this Court must rely upon *Fikes*, for the proposition that New Mexico now requires proof of actual harm to one's reputation as the correct definition of the actual injury element for defamation in New Mexico. We disagree. Although *Fikes* recited some compelling and direct language discussing the principles of injury to reputation as the "primary basis of an action [in] libel or defamation," it did not exclude the other established basis for such a defamation claim and did not analyze either of the actual injury provisions that are at issue in this case. 2003-NMSC-033, ¶¶ 12-19. *Fikes* addressed the question, "What does it mean for a statement to be defamatory[,]" not what is necessary to establish the actual injury element for liability purposes in a defamation claim. *Id.* ¶ 12. The Supreme Court's analysis was limited to whether the communication at issue was defamatory and whether the recipient of the communication thought the communication was defamatory. *Id.* Justice Minzner generally explained that a plaintiff must prove the nine elements set forth in UJI 13-1002(B) to prove a defamation action, including the eighth element that the communication caused injury to reputation. *Fikes*, 2003-NMSC-033, ¶ 12. The Court then specifically analyzed two of the other elements of defamation, UJI 13-

5

1002(B)(5) and (7). *Fikes*, 2003-NMSC-033, ¶¶ 12-19. The language that Defendants rely upon from *Fikes* was background information on defamation and was not an analysis of the common law principle of "actual injury" included in UJI 13-1002(B)(8). *See Fernandez v. Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)). *Fikes* did not alter the common law requirements for defamation after *Gertz* or redefine actual injury to eliminate evidence of humiliation and mental anguish for establishing liability in a defamation claim under *Reed*, *Marchiondo*, *Poorbaugh*, and *Newberry*.

**{14}** In his complaint, Plaintiff alleged harm to his reputation along with personal humiliation and mental anguish. Defendants in their motion for summary judgment put forth evidence that Plaintiff's reputation had not been injured. Regarding Plaintiff's claims for personal humiliation and mental anguish, Defendants in their motion for summary judgment stated, "[T]hough no evidence of such exists, any personal humiliation, mental anguish, or suffering by [Rev.] Smith was caused by the existence of the [l]etter, not the Defendants' distribution of the [letter]." Beyond this unsubstantiated allegation in the motion, Defendants did not put forth any evidence negating Plaintiff's original claims that he suffered personal humiliation and mental anguish as a result of the publication of the anonymous letter. *See Blauwkamp*, 114 N.M. at 231, 836 P.2d at 1252 (explaining that the movant has the initial burden to put forth evidence refuting the plaintiff's claims in order to establish the movant's prima facie case for summary judgment). We agree with Plaintiff that Defendants did not meet their initial burden of making a prima facie showing to refute Plaintiff's claim that he suffered actual injury in the form of personal humiliation and mental anguish. *See, e.g.*, *Solorzano v. Bristow*, 2004-NMCA-136, ¶¶ 15-18, 136 N.M. 658, 103 P.3d 582 (holding that the defendant did not meet her burden of proving a prima facie case for summary judgment). Plaintiff is entitled to proceed with his defamation claim against Defendants by proving actual injury and damages.

**CONCLUSION**

**{15}** We therefore hold that our current UJI 13-1002(B)(8) is an inaccurate statement of the law and reverse the district court's grant of summary judgment in Defendants' favor. We also remand for further proceedings consistent with this opinion.

**{16}** **IT IS SO ORDERED.**

---

                **TIMOTHY L. GARCIA, Judge**

**JONATHAN B. SUTIN, Judge (specially concurring).**

**RODERICK T. KENNEDY, Judge (dissenting).**

**SUTIN, Judge (specially concurring).**

**{17}** I agree that entry of summary judgment was improper and that we should remand for further proceedings. I describe here how I analyze the issue.

**{18}** To establish liability in defamation, a plaintiff must prove the existence of a defamatory communication that was published proximately causing actual injury to the plaintiff. *See Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 429, 773 P.2d 1231, 1236 (1989); *see also Poorbaugh v. Mullen*, 99 N.M. 11, 21, 653 P.2d 511, 521 (Ct. App. 1982) ("Liability for defamation is based upon both publication, i.e., communication to a third person, and proof of actual damages."). Defamatory communications are "those which tend to expose a person to contempt, to harm the person's reputation, or to discourage others from associating or dealing with [him or her]." UJI 13-1007 NMRA. I see no reason why, once publication of a defamatory communication as defined in UJI 13-1007 is proved, the actual injury element must in every case be actual injury to reputation.

**{19}** The actual injury that must be proved is actual damage caused by publication of the defamatory communication. Once a plaintiff proves publication of a defamatory communication, the plaintiff need prove only one type of actual injury among those listed in UJI 13-1010 NMRA. For a defendant to prevail on summary judgment, the defendant must negate the particular actual injury that the plaintiff asserts he suffered as a result of publication of the defamatory communication. Here, Defendant failed to negate the actual injury of humiliation and anxiety asserted by Plaintiff.

**{20}** I have two observations. One, if in New Mexico to establish liability in defamation a plaintiff must not only prove the existence of a defamatory communication that was published but must also prove that the actual injury element consisted of actual injury to the plaintiff's reputation, our Supreme Court needs to refine the law as it is stated in *Newberry*. Two, if *Newberry* is to remain unchanged, UJI 13-1002(B)(8) NMRA and UJI 13-1010, which appear to be facially irreconcilable, need to be changed so that the actual injury element can be satisfied on a showing of damage other than damage to reputation. One way to accomplish that change is as suggested in the main opinion, namely, by changing UJI 13-1002(B)(8) to read, "The communication caused actual injury to the plaintiff."

_____
**JONATHAN B. SUTIN, Judge**

**KENNEDY, Judge (dissenting).**

**{21}** I do not concur with the majority's opinion in this case because I conclude that in every case the tort of defamation requires proof of actual injury to the plaintiff's reputation. That the existence of other damages that might accrue as a result of an injury are a different thing than what might establish the injury itself. Damages are not injuries, but result from injuries. For that reason, Plaintiff's failure to specifically prove an injury to his reputation cannot be assuaged by his proving that the defamatory publication caused him humiliation and anguish. There are other torts available that can provide compensation to a plaintiff for being humiliated.

**{22}** I believe this opinion confuses establishing an entitlement to receive damages that result from an injury with establishment of a cause of action. Hence, I do not believe that UJI 13-1002(B)(8) is misguided, nor do I believe UJI 13-1010 establishes elements of the cause of action. I think the former sets out the elements of the cause of action, including requiring proof of "actual injury," and that the latter sets out those things that might be proven as "actual damages." Injury is not damages, either under the UJI or, more importantly, the case law, and I do not believe that any particular type of damages (in this case, humiliation and agony) can drive the calculation of whether an "actual injury" gave rise to the "actual damage."

**{23}** I reached this conclusion while again reading the discussion of *Gertz* in *Marchiondo*, 98 N.M. at 403, 639 P.2d at 471. Although "actual injury" may include humiliation and the like, causing anguish, humiliation, and other injuries to reputation can be accomplished in other ways and by other torts than defamation. I conclude then that the inclusion of actual injury to reputation as an element of the tort of defamation is the *sine qua non* of defamation. Otherwise, there is nothing defamatory to distinguish a tort producing mental anguish and humiliation from, for instance, the tort of outrage or *prima facie tort*, if those "feelings" injuries can stand alone. Hence, I believe that the circulated opinion misreads *Marchiondo*'s discussion of *Gertz*. I also believe that *Poorbaugh* doesn't establish any principle relating to "actual injury to reputation," save by saying that publication only to a spouse was not publication sufficient to support an action. 99 N.M. at 21, 635 P.2d at 521. I agree the jury instructions were adopted pursuant to the invitation in *Marchiondo*, and think both the UJI's can stand for each part of the equation in defamation cases. *See Marchiondo*, 98 N.M. at 403, 639 P.2d at 471. I conclude that New Mexico's inclusion of UJI 13-1002(B)(8) is quite intentional and meaningful. I also conclude that this is the basis for *Fikes*' language insisting on proof of the injury to reputation element contained in UJI 13-1002(B)(8). *Fikes*, 134 N.M. at 606, 81 P.3d at 549. Hence, I regretfully cannot tread the path scouted by the majority opinion and respectfully dissent.

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for *Smith v. Durden*, Docket No. 28,896**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **JI** | **JURY INSTRUCTIONS** |
| JI-CI | Civil Jury Instructions |
| JI-IJ | Improper Jury Instructions |
| | |
| **RE** | **REMEDIES** |

RE-DG     Damages, General
RE-PD     Proof of Damages

**TR**       **TORTS**
TR-DF     Defamation